# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: October 3, 2024

```
* * * * * * * * * * * * *
LORETTA FRANKLIN,              *    No. 20-33v
                               *
         Petitioner,           *    Special Master Sanders
                               *
v.                             *
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                               *
         Respondent.           *
* * * * * * * * * * * * *
```

*David J. Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.
*Kimberly S. Davey*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On March 18, 2023, Loretta Franklin ("Petitioner") filed a motion for attorneys' fees and costs, requesting a total of **$23,752.11** for her counsel, Mr. David Carney and Mr. Adam Green. Mot. Attorneys' Fees & Costs at 1–2, ECF No. 48 [hereinafter "Fees App."].[2] This amount consists of $22,022.00 in fees and $1,730.11 in costs. *Id.* Pursuant to General Order No. 9, Petitioner did not personally incur any costs. *Id.* at 52. On March 30, 2023, Respondent filed his response to Petitioner's motion. Resp't's Resp., ECF No. 49. In his response, Respondent stated his opposition, asserting that "[b]ecause [P]etitioner cannot establish that this claim had a reasonable basis at the time of filing, the Court should deny [P]etitioner's motion for attorneys' fees and costs." *Id.* at 1. For the reasons stated below, I find that Petitioner's claim did have reasonable basis at the time of filing and throughout the duration of the case, and she is therefore entitled to fees and costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] All citations to Petitioner's motion for attorneys' fees and costs, ECF No. 48, will use the page numbers generated by CM/ECF.

I.      **Procedural History**

On January 13, 2020, Petitioner filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program ("Program").³ 42 U.S.C. §§ 300aa-1 to -34 (2018); Pet., ECF No. 1. Petitioner alleged that she suffered from a shoulder injury related to vaccine administrated ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 27, 2018. Pet. at 1. Petitioner filed medical records on February 8, 2020 and an affidavit on March 21, 2020. Pet'r's Exs. 1–2, ECF No. 6; ECF No. 11. On March 21, 2020, Petitioner also filed an amended petition with additional details surrounding the vaccination and timeline of the onset of symptoms. Am. Pet. at 1–2, ECF No. 12. On May 7, 2020, Petitioner filed medical records, a second affidavit, her medical history questionnaire, and a statement of completion. Pet'r's Exs. 3–4, ECF No. 14; ECF Nos. 15–16.

This matter was assigned to the Special Processing Unit ("SPU") and a status conference was held on July 8, 2020. ECF No. 18; Order, docketed June 18, 2020. Petitioner filed additional medical records on July 8, 2020 and October 27, 2020, followed by an updated statement of completion. Pet'r's Ex. 5–7, ECF No. 20, 26; ECF No. 27. An additional status conference was held on March 3, 2021. Min. Entry, docketed Mar. 3, 2021. This matter was assigned to me that same day. ECF No. 31. On August 2, 2021, Respondent filed his Rule 4(c) report indicating that this case was not appropriate for compensation. Resp't's Report at 1, ECF No. 35.

I held a status conference on April 20, 2022. Min. Entry, docketed Apr. 20, 2022. During the status conference, I discussed the issues in this case and Petitioner requested thirty days to determine how she wished to proceed. Sched. Order, ECF No. 37. In compliance with a scheduling order, Petitioner filed a status report on June 1, 2022, which indicated that Petitioner's counsel intended to withdraw from this case "given the Court's opinions" and that Petitioner intended to proceed with her case "so long as she [could] find another attorney to continue with her case." Status Report at 1, ECF No. 39. Petitioner also requested to file an additional status report in thirty days to allow counsel to work with Petitioner to retain a new attorney or dismiss her case. *Id.* Lastly, the status report requested a Rule 5 order from the Court. *Id.* A scheduling order was issued with a thirty-day deadline to file a motion to substitute attorney. ECF No. 40. On July 29, 2022, Petitioner filed a status report requesting a show cause order be issued to give Petitioner a deadline "to either retain new counsel . . . or agree to a voluntary withdraw[l] of Petitioner's Petition for Compensation." ECF No. 41, at 2. An order to show cause was issued on October 5, 2022, which included a summary of the case thus far. ECF No. 42. Specifically, the order summarized the status conference I held on April 20, 2022:

> During the status conference, I noted questions regarding vaccination location site (on the body) and duration of Petitioner's injury for at least six months, as required by the Vaccine Act. See 42 U.S.C. U.S.C. § 300aa11(c)(1)(D)(i) (requiring that a petitioner "suffered the residual effects or complication of [her] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine[]" unless her injury resulted in death or surgical intervention and inpatient

---

³ National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

>hospitalization). Because of these issues, I communicated my concerns regarding Petitioner's ability to satisfy her burden in this case and to establish reasonable basis.

*Id.* at 1. The order also stated that Petitioner failed to comply with Court orders to prosecute her case and granted a final opportunity for Petitioner to show cause as to why her case should not be dismissed for failure to prosecute. *Id.* Petitioner failed to make a filing in compliance with this order. A decision dismissing this case for failure to prosecute was issued on November 30, 2022, and judgment was entered on January 3, 2023. ECF Nos. 44–45.

On March 17, 2023, Petitioner filed a notice of election to file a civil action. ECF No. 47. One day later, Petitioner filed a motion for attorneys' fees. ECF No. 48. Respondent filed a response on March 30, 2023. ECF No. 49. Petitioner filed a reply on April 6, 2023. ECF No. 50.

On August 15, 2024, I issued a scheduling order directing the parties to file briefing regarding specific evidence of the duration of Petitioner's injury between October 28, 2018, and February 17, 2020. ECF No. 51. Petitioner filed a brief on August 16, 2024, and Respondent filed aa response on September 9, 2024. ECF Nos. 52–53. Petitioner did not file a reply.

## II.     Medical History

Petitioner's medical history pre vaccination included Graves disease,[4] gastroesophageal reflux disease ("GERD"),[5] bilateral knee pain, chronic back pain, obesity, and alcohol abuse. Pet'r's Ex. 1 at 136–45; Pet'r's Ex. 2 at 5–33; Pet'r's Ex. 4 at 50–86; Pet'r's Ex. 6 at 3–17. Petitioner received a flu vaccination on September 27, 2018, during a primary care visit for pain in her legs that morning. Pet'r's Ex. 4 at 50. The vaccination record did not state in which arm the vaccination was administered. *Id.*

On October 16, 2018, about two- and one-half weeks post vaccination, Petitioner reported to her primary care provider complaining of "left-sided chest pain for the last week." Pet'r's Ex. 1 at 156–57. Petitioner reported that the pain radiated up to the left shoulder and was worse with coughing and bending. *Id.* at 156. It was noted that Petitioner had a history of muscle spasms in the middle of her chest. *Id.* An electrocardiogram ("EKG")[6] was performed and was normal. *Id.* at 158. A physical exam showed "increased pain with extension and lateral movement[,]"

---

[4] Graves disease is "a syndrome of diffuse hyperplasia of the thyroid, with a female predominance; it usually has an autoimmune etiology and has been linked to autoimmune thyroiditis. Characteristics include hyperthyroidism (q.v.), usually with goiter and ophthalmic symptoms (Graves orbitopathy)." *Dorland's Illustrated Medical Dictionary* (33rd ed. 2020) [hereinafter "*Dorlands*"] at 797. "Most patients have circulating thyroid-stimulating immunoglobulins that cause excessive secretion of thyroid hormones by binding to TSH receptors on thyroid follicular cells." *Id.*

[5] Gastroesophageal reflux disease, or GERD, is "any condition noted clinically or histopathologically that results from gastroesophageal reflux, ranging in seriousness from mild to life-threatening; principal characteristics are heartburn and regurgitation." *Dorlands* at 756.

[6] An electrocardiogram, or EKG, is "a graphic tracing of the variations in electrical potential caused by the excitation of the heart muscle and detected at the body surface." *Dorlands* at 593. "The normal electrocardiogram is a scalar representation that shows deflections resulting from atrial and ventricular activity as changes in the magnitude of voltage and polarity (positive and negative) with time." *Id.*

"[t]enderness to palpation left anterior chest[,]" and "increased pain with resistance of upper arm movement." *Id.* The provider opined that the chest wall pain was "likely related to muscle strain" and recommended that Petitioner begin "moist heat to chest" and follow up if she did not improve in five to seven days. *Id.*

On October 27, 2018, Petitioner presented to the emergency department ("ED") at the University of Rochester Medical Center ("URMC") for "left sided chest pain and left shoulder pain that began [two] weeks [ago] when she received the flu vaccine." *Id.* at 182. Petitioner reported chest congestion that progressed to a cough with blood-tinged sputum[7] and chest and shoulder pain a few days later, which worsened with movement. *Id.* Petitioner also noted that she "woke up from sleeping one day with her left arm in an abnormal position" and that her pain began after that. *Id.* at 167. A physical exam revealed left shoulder tenderness at the acromioclavicular ("AC") joint[8] and a normal range of motion. *Id.* at 170–71. A chest x-ray came back normal. *Id.* at 174. Petitioner was given one dose of valium[9] to relax her muscles and was told that her pain would resolve with time. *Id.* The differential diagnoses were "[m]usculoskeletal pain, AC joint sprain, [acute coronary syndrome[10]] less likely as the clinical history and picture [did] not fit." *Id.* at 171.

On January 14, 2019, Petitioner saw endocrinologist Steven Wittlin, M.D. for a follow-up for her Graves disease. Pet'r's Ex. 6 at 18. Petitioner reported a cyst with left foot pain, but otherwise had "[n]o new medical problems." *Id.* Petitioner did not report shoulder pain. *Id.*

On March 27, 2019, Petitioner saw her primary care provider, Mala Ashok, MBBS, for a variety of issues, including chronic back pain, GERD, hyperlipidemia,[11] sinus congestion, and Graves disease. Pet'r's Ex. 1 at 192–203. Petitioner did not report shoulder pain. *Id.* Petitioner returned to Dr. Ashok on April 28, 2019 for a cough and scratchy throat. *Id.* at 215–18. Again, Petitioner did not mention shoulder pain. *Id.* Petitioner returned to Dr. Ashok on June 7, 2019 for cold symptoms and a prescription for a shower chair and hand-held shower piece because of morning body aches. *Id.* at 220–30. Dr. Ashok found "[c]hronic pain of both lower extremities." *Id.* at 224. On July 9, 2019, Petitioner returned to Dr. Ashok with complaints of chronic bilateral back pain radiating down her legs and left shoulder pain. Pet'r's Ex. 4 at 20. She was assessed with "chronic bilateral back pain, unspecified back location." Dr. Ashok noted arthritis, sciatica, and musculoskeletal in reference to Petitioner's physical exam. *Id.* at 24.

---

[7] Sputum is "matter ejected from the respiratory tract through the mouth." *Dorlands* at 1728.
[8] The acromioclavicular joint, also known as articulatio acromioclavicularis, is "the synovial joint between the acromion of the scapula and the acromial extremity of the clavicle." *Dorlands* at 156.
[9] Valium is a "trademark for preparations of diazepam." *Dorlands* at 1990. Diazepam is a "benzodiazepine used as an antianxiety agent in the treatment of anxiety disorders and for short-term relief of anxiety symptoms, as a preoperative or preprocedural medication to relieve anxiety and tension, also as a skeletal muscle relaxant, anticonvulsant, antitremor agent, antipanic agent, and for treatment of symptoms of acute alcohol withdrawal." *Id.* at 505.
[10] Acute coronary syndrome is "a classification encompassing clinical presentations ranging from unstable angina through non–Q wave infarction, sometimes also including Q wave infarction." *Dorlands* at 1789.
[11] Hyperlipidemia is "a general term for elevated concentrations of any or all of the lipids in the plasma, such as hypertriglyceridemia or hypercholesterolemia." *Dorlands* at 880.

Petitioner returned to endocrinologist Dr. Wittlin on July 15, 2019, Pet'r's Ex. 6 at 21. Petitioner reported that she did not have joint pain, except for in her right knee. *Id.*

On September 27, 2019, Petitioner saw Dr. Ashok for a six-month follow-up visit. Pet'r's Ex. 4 at 13. Her medical history listed Graves disease, alcohol abuse, and chronic back pain. *Id.* She did not report any shoulder pain at that time. Petitioner also saw Dr. Ashok for various complaints on October 8, 2019, and December 10, 2019. *Id.* at 9, 11, 21. Petitioner did not report shoulder pain at any of those visits. *See id.*

Petitioner returned to endocrinologist Dr. Wittlin on January 13, 2020 for a follow-up regarding Graves disease. Pet'r's Ex. 6 at 24–26. Petitioner reported that she gained weight due to her left foot pain. *Id.* at 24. Dr. Wittlin noted left knee pain, but no shoulder pain. *Id.*

On February 17, 2020, Petitioner saw Rachel Daly, NP at her primary care provider office and reported "bilateral shoulder pain" that "started out in the left." Pet'r's Ex. 7 at 131. Petitioner noted that she went to the ED on October 27, 2018 for the pain and "[s]ince that time she has developed pain in the right shoulder as well." *Id.* Petitioner also reported occasional weakness in her arms and back pain. *Id.* at 131, 133. An exam revealed a full range of motion in both shoulders, increased pain with abduction beyond ninety degrees, and tenderness to palpation in right AC and glenohumeral ("GH")[12] joints. *Id.* at 132. Petitioner was referred to physical therapy and orthopedics and given a prescription for oral steroids. *Id.* X-rays were ordered for both shoulders. *Id.* at 5. NP Daly opined that Petitioner likely had rotator cuff tendinitis[13] in her right shoulder and arthritis[14] in her left shoulder. *Id.* at 5–6.

On March 16, 2020, Petitioner returned to her primary care office and did not mention any shoulder issues. *Id.* at 151. On May 8, 2020, Petitioner again returned to her primary care office and saw Dr. Ashok to complete paperwork for home health services. *Id.* at 165. Petitioner reported right shoulder pain that had been present for about one month. *Id.* Dr. Ashok noted history of left shoulder dislocation and Petitioner reported "popping" of the right shoulder when stretching, which resulted in pain radiating to her right upper arm. *Id.* Dr. Ashok found acute pain of right shoulder with differential diagnoses of tendinitis versus rotator cuff tear, dislocation, and bursitis.[15] *Id.* at 169. Dr. Ashok recommended cold compresses and prescribed an oral steroid. *Id.*

Petitioner had a telephone visit with Dr. Ashok for sinus congestion on June 23, 2020, and did not mention shoulder pain. *Id.* at 189–91.

On June 27, 2020, Petitioner presented to the ED at URMC after a motor vehicle accident. *Id.* at 200. Petitioner reported that she went home after the accident but that she later developed

---

[12] The glenohumeral joint, or articulatio glenohumeralis, is "the joint formed by the head of the humerus and the glenoid fossa of the scapula." *Dorlands* at 157.

[13] Rotator cuff tendinitis is "an overuse injury consisting of inflammation of tendons of one or more of the muscles forming the rotator cuff, usually owing to repetitive elevation and abduction of the upper limb; it can lead to tendon degeneration and bony changes of the acromial head." *Dorlands* at 1857.

[14] Arthritis is "inflammation of a joint." *Dorlands* at 154.

[15] Bursitis is "inflammation of a bursa, occasionally accompanied by a calcific deposit in the underlying tendon." *Dorlands* at 260.

head pain, neck pain, and right knee pain. *Id.* Computed tomography ("CT") scans[16] of the head, chest, knee, and spine were all normal. *Id.* at 210–11, 229–36, 251–58.

On July 8, 2020, Petitioner followed up with Dr. Ashok following the motor vehicle accident. Pet'r's Ex. 8 at 4. Petitioner was diagnosed with traumatic buttock pain and received an injection and prescription for pain management. *Id.* at 5.

Petitioner returned to endocrinologist Dr. Wittlin for Graves disease on July 13, 2020. Pet'r's Ex. 6 at 27–29. Petitioner did not report any shoulder pain. *Id.*

### III. Affidavits

Petitioner filed two affidavits, a narrative petition, and a narrative amended petition. In the petitions, Petitioner described her pain onset and hospital visit on October 27, 2018. Pet. at ¶ 5; Am. Pet. at ¶ 4. She also asserted that she "ha[d] experienced pain in her shoulder for more than six (6) months following the onset of her left shoulder pain." Pet. at ¶ 8. Petitioner then immediately described the pain as she experienced it at the time her petition was filed in January of 2020. She stated that she "continue[d] to experience severe pain, discomfort and limited range of motion that [] affected her quality of life and activities of daily living." *Id.* at ¶ 9.

In her first affidavit, Petitioner stated that her "most recent appointment with [her] primary care providers for [her] left shoulder injury was on September 27, 2019." Aff. at ¶ 18. She explained that at that time, she "continued to complain of shoulder pain and a debilitating lack of mobility." *Id.*

### IV. Standards of Review

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good faith. § 15(e)(1); *see, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

#### a. Good Faith

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.[17] *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL

---

[16] Computed tomography, or a CT scan, is "tomography in which the emergent x-ray beam is measured by a scintillation counter; the electronic impulses are recorded digitally and then are processed by a computer for reconstruction display." *Dorlands* at 1646.

[17] Respondent has not contested good faith in this case. It is not at issue.

496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

### b.   Reasonable Basis Determination

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6–7. While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano,* 116 Fed. Cl. at 283. The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion."). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021). The Federal Circuit has made a determination of law regarding what constitutes "objective" evidence in the context of a reasonable basis analysis. Indeed, it found that multiple pieces of evidence, perhaps not sufficient alone, when taken together, can amount to more than a mere scintilla. *See id.* at 793–95. Furthermore, the Federal Circuit explained that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

In another opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.,* No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012

(Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). If reasonable basis is lost, "Petitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.,* 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.,* 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.,* 128 Fed. Cl. 724, 727 (2016)).

## V.     Reasonable Basis Analysis

Respondent challenged the reasonable basis of Petitioner's claim from the time it was filed through her application for fees. He argued that Petitioner had not set forth "more than a scintilla of evidence that she suffered a shoulder injury, as alleged, or that she suffered the residual effects of her alleged injury for more than six months." Resp't's Resp. at 11. Respondent added that Petitioner "failed to present sufficient evidence that she received the subject vaccination in her left shoulder." *Id.*

After careful review of the medical records, I find that Petitioner has satisfied the reasonable basis requirements because there is more than a scintilla of objective evidence in the record that Petitioner suffered the residual effects of her alleged injury for more than six months as required by the Vaccine Act.

Petitioner's medical records demonstrate that Petitioner presented to the ED on October 27, 2018, with left shoulder pain "after she got the flu shot [two] weeks ago" and noted "that [it] [got] worse when she move[d]." Pet'r's Ex. 1 at 182. The next medical record that mentions shoulder pain is the July 9, 2019 record with Dr. Ashok. Pet'r's Ex. 4 at 20. Petitioner is not diagnosed with any type of shoulder injury during this visit, nor are any of her treatment plans or medications specifically targeting her shoulder. However, Petitioner's chief complaints at the time included left shoulder pain. This visit with Dr. Ashok occurred over nine months post vaccination and is evidence that Petitioner's injury continued for at least six months as required to bring a claim. While Petitioner had multiple visits with Dr. Ashok in the months preceding and following this July appointment, it was not until a primary care visit on February 17, 2020, where Petitioner next reported "bilateral shoulder pain." Pet'r's Ex. 7 at 131. The lack of any mention of left shoulder pain during visits that took place between October 27, 2018 and July 9, 2019, and a subsequent period from July 10, 2019 through February 16, 2020, undercuts the veracity of her claim, and ultimately, the claim was not successful. However, a motion for fees and costs is not subject to the same standard as an entitlement ruling. Petitioner needs only to submit "more than a mere scintilla" of objective evidence in support of her claim. *James-Cornelius*, 984 F.3d at 1379. In fact, the Federal Circuit has specifically held that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

Petitioner stated in her affidavit that she had an "appointment with [her] primary care providers for [her] left shoulder injury [] on September 27, 2019. Aff. at ¶ 18. She wrote that she complained of continued shoulder pain and limited mobility. *Id.* However, the medical records from that doctor's visit do not note shoulder pain or injury as a complaint or diagnosis. That visit focused on treatment for Petitioner's long-standing back pain. It is unclear which, if any of her

8

doctor's appointments Petitioner is referring to during her description of the September 27, 2019 visit. However, she also stated in her affidavit that she suffered from her shoulder pain for well over six months. That coupled with the July 9, 2019 medical record is sufficient.

Of note, the Court offered Petitioner the opportunity to explain what filings demonstrated Petitioner's injury between October 28, 2018, and February 17, 2020, and Petitioner simply repeated the argument from her fees motion reply filed on April 6, 2023. Specifically, she noted her medical visits from October 2018 and February 2020. She did not mention the July 2019 visit, nor did she address the two periods of time absent of any mention of treatment or examination for shoulder pain.

Additionally, Petitioner's visit on February 17, 2020, was one month after the instant petition was filed. Pet'r's Ex. 7 at 5–6. It is curious that after six months without complaints of a shoulder injury related to her flu vaccine, and only one month after the instant petition was filed, did Petitioner revisit a medical professional with complaints of a vaccine-related shoulder injury.

Petitioner's medical records include contemporaneous complaints of shoulder pain more than six months post vaccination in her left shoulder. Furthermore, Petitioner has never alleged and there is no evidence to suggest, that she received her vaccination anywhere other than her left shoulder. There is no dispute that Petitioner did receive a flu vaccine on September 27, 2018. In accordance with the Federal Circuit's guidance in *Cottingham* and *James-Cornelius*, I find that Petitioner's claim had a reasonable basis, and she is therefore entitled to attorneys' fees and costs.

## VI. Reasonable Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and

9

reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### a. Hourly Rates

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.[18]

Petitioner requests the following rates for the work of her counsel, Mr. David Carney: $325.00 per hour for work performed in 2019, $350.00 per hour for work performed in 2020, $375.00 per hour for work performed in 2021, $400.00 per hour for work performed in 2022, and $425.00 per hour for work performed in 2023. Petitioner also requests $145.00 per hour for work performed by her counsel's paralegals from 2019 to 2022.

I have reviewed the billing records submitted with Petitioner's request, and I find that the hourly rates billed for 2019 through 2023 for attorney time are all reasonable and in accord with prior awards made by other special masters.

### b. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). It is well-established that billing for administrative or clerical tasks is not permitted in the Vaccine Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.*, No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch*, 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Upon review of the submitted billing records, I find the majority of the time billed to be reasonable. A small reduction, however, is necessary due to block billing, including time billed for

---

[18] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

non-compensable administrative tasks (e.g., filing documents,[19] calendaring dates,[20] and downloading and saving documents).[21] *Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) ("It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable."). "Clerical and secretarial tasks should not be billed at all, regardless of who performs them." *Paul v. Sec'y of Health & Hum. Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); *see also Rochester*, 18 Cl. Ct. at 387. One instance of block billing including the administrative task of filing was on March 24, 2020, when counsel billed a single entry for "drafted Amended Petition and filed with the Court." Fees App. at 15. Because this constitutes block billing, it is impossible to discern how much time was spent on filing verses compensable time. Therefore, I find a 10%[22] reduction reasonable. Accordingly, Petitioner is entitled to final attorneys' fees in the amount of $19,819.80.[23]

### c. Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $1,730.11 in costs incurred by counsel, primarily compromised of obtaining medical records and the filing fee. Petitioner has provided adequate documentation for these expenses, and they appear reasonable for the work performed in this case. Therefore, I will award the full amount requested for attorneys' costs.

### VII. Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2018), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

| Attorneys' Fees Requested | $22,022.00 |
|---|---|
| (Reduction to Fees) | $2,202.20 |
| **Attorneys' Fees Awarded** | **$19,819.80** |
|  |  |
| Attorneys' Costs Requested | $1,730.11 |
| (Reduction of Costs) | $0.00 |
| **Attorneys' Costs Awarded** | **$1,730.11** |
|  |  |

---

[19] See for example, entries dated February 8, 2020; March 21, 2020; October 27, 2020; June 1, 2022; July 29, 2022; March 17, 2023. This list is not exhaustive.

[20] See for example, entries dated June 18, 2020; October 27, 2020; February 24, 2021; June 17, 2021; April 20, 2022; July 7, 2022. This list is not exhaustive.

[21] See for example entries dated March 24, 2020; January 22, 2021; June 21, 2022. This list is not exhaustive.

[22] $22,022.00 x 10% = $2,202.20.

[23] $22,022.00 - $2,202.20 = $19,819.80.

| Attorneys' Fees and Costs | $21,549.91 |
|---|---|

Accordingly, the undersigned awards a lump sum in the amount of **$21,549.91** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel of record, David Carney, for final attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[24]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[24] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.